UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE VAN BUREN,
personal representative for the
estate of William Reddie,

Plaintiff,

Case No. 13-14565
Honorable Thomas L. Ludington

v.

CRAWFORD COUNTY, CITY OF
GRAYLING, JOHN KLEPADLO,
ALAN SOMERO, CRAIG SHARP,
and STACY SAGE,

Defendants.
______________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On February 3, 2012, law enforcement officers and employees with Michigan's Department of Human Services (DHS) went to William Reddie's home to take his two-year-old son into protective custody. But when the officers and DHS employees entered Reddie's apartment, he drew a knife and one of the attendant police officers shot and killed him. Reddie's mother, Michelle Van Buren, then filed a complaint against the City of Grayling, Michigan, Crawford County, and the involved law enforcement officers John Klepadlo and Alan Somero. Van Buren later filed an amended complaint which added as Defendants the two DHS employees that went to Reddie's home the day he was killed—Craig Sharp and Stacy Sage—as well as four additional claims of wrongdoing. Presently, Van Buren's amended complaint alleges nine claims against the City of Grayling, Crawford County, Officer Klepadlo, Officer Somero, Sharp, and Sage. *See* Pl.'s Am. Compl., ECF No. 8.

Sharp and Sage filed a motion to dismiss Van Buren's claims against them on March 12, 2014. The motion will be granted.

**I**

**A**

As of February 2012, Reddie lived with his two-year-old son in Grayling, Michigan. On February 3, 2012, police officers were summoned to Reddie's residence because of a domestic disturbance, and upon arrival they allegedly smelled marijuana, observed Reddie with a marijuana pipe, and Reddie admitted to smoking marijuana around his minor child. After leaving Reddie's home one of the officers reported the situation to Sharp, an employee of Child Protective Services for Michigan's DHS. That same day—February 3, 2012—Sharp filed a petition for child protective proceedings (the Petition).[1]

According to Sharp's Petition, Reddie's minor son had been "recently removed from his mother . . . for substance abuse and domestic violence." Petition 2, *attached as* Defs.' Mot. Ex. B. Sharp explained that on February 3, 2012, "Police were called out to William's [sic] Reddie's residence . . . for a domestic disturbance" when they "heard screaming and arguing inside his apartment." *Id*. According to Sharp, when "police arrived the residence had a strong odor and smell of marijuana." *Id*. Sharp indicated that "Reddie admitted that he was smoking marijuana inside his apartment" in the presence of his minor son and was also "observed to be in possession

[1] Notably, Sharp's Petition and the resulting court order were not attached to Van Buren's amended complaint. So Van Buren argues that consideration of those documents while addressing Sharp and Sage's motion to dismiss "is improper." Pl.'s Resp. 12. However, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings"—and therefore appropriately considered on a Rule 12(b)(6) motion—"if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). In Van Buren's amended complaint, she claims that Sharp and Sage "fabricated and/or manufactured evidence to obtain a court order to remove William Reddie's son from his care." Pl.'s Am. Compl. ¶ 18. Thus she referred to both the Petition Sharp submitted, in which he allegedly "fabricated and/or manufactured evidence," and the subsequent court order. Moreover, those documents are central to Van Buren's claims. For example, one of her claims is that Sharp and Sage entered Reddie's apartment without a warrant. A court order authorizing entry is clearly relevant to this claim. Because the Petition and Order are referenced in Van Buren's amended complaint and are central to her claims, they will be considered while addressing Sharp and Sage's motion to dismiss.

of a marijuana pipe." *Id*. Most importantly, Sharp claimed that "[w]hen DHS interviewed William Reddie he was making verbal threats against the officer that responded to the disturbance call" and "was also threatening to leave town." *Id*.

After receiving this information, Sharp concluded that it would be contrary to the welfare of Reddie's minor son to remain in Reddie's home "due to the apparent risk of harm because of threatened harm and illegal substance use in the home with the child present." *Id*. at 3. Sharp believed that reasonable efforts had previously been made to render removal unnecessary, such as parenting classes, random drug screening, and the provision of Women Infants and Children (WIC) and DHS benefits, including supplements for food and medicine. *Id*. But because those measures had proven unsuccessful, Sharp requested "that the court authorize this petition and place the child under court jurisdiction, for care and custody with DHS." *Id*. at 2.

The same day that Sharp filed the Petition—February 3, 2012—the Chief Judge of Michigan's Crawford County Circuit Court, the Honorable Monte Burmeister, issued a court order (the Order) to take Reddie's son into protective custody. *See* Order 1, *attached as* Defs.' Mot. Ex. A. In the Order, Judge Burmeister concluded that reasonable efforts had been made to prevent removal, including "parenting classes, random drug screens," and the provision of "WIC, and DHS medical and food assistance . . . ." *Id*. Judge Burmeister established that despite these measures, the "conditions or surroundings of the child[] are such as to endanger the health, safety, or welfare of the child[], and it is contrary to the welfare of the child[] to remain in the home." *Id*. Judge Burmeister cited Reddie's alleged use of "marijuana in the home in the presence of the child" and the "domestic disturbance and threats made toward law enforcement by [Reddie]" as justification for the removal of Reddie's son. *Id*. The Judge also directed

Reddie to "appear for a preliminary hearing in this matter to be held on 02/03/2012 at 4:30 p.m. at Crawford County Family Court." *Id*. at 2.

Sharp and Sage then rendezvoused with Officers Somero and Klepadlo in order to travel to Reddie's home to execute the Order and take Reddie's son into protective custody. Van Buren alleges that the four individuals entered Reddie's apartment "without his consent[,]" Pl.'s Am. Compl. ¶ 14, and that "[a]t the thought of losing his son" Reddie "became visibly upset" and produced a knife, *id*. ¶ 16. Officer Somero then aimed his taser at Reddie, and Officer Klepadlo "fired a shot" at Reddie, which proved fatal. Defs.' Answer ¶¶ 24, 25, ECF No. 14.

**B**

On November 1, 2013, Van Buren—as the personal representative of Reddie's estate—filed a complaint against Crawford County, the City of Grayling, and Officers Klepadlo and Somero. Pl.'s Compl., ECF No. 1. The complaint includes claims for excessive force under 42 U.S.C. § 1983 (Count I), failure to train and supervise as to Crawford County (Count II), failure to train and supervise as to the City of Grayling (Count III), assault and battery (Count IV), and gross negligence (Count V). On January 31, 2014, Van Buren filed an amended complaint, adding Sharp and Sage as Defendants as well as claims for warrantless entry (Count VI), violation of due process (Count VII), conspiracy under § 1983 (Count VIII), and abuse of process (Count IX). *See* Pl.'s Am. Compl. The first five Counts in the amended complaint are consistent with Van Buren's original complaint.

On March 12, 2014, Sharp and Sage filed a motion to dismiss all of Van Buren's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Generally, however, a Rule 12(b)(6) motion to dismiss should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis in original) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)).

**III**

Of Van Buren's nine claims, only five even arguably pertain to Sharp or Sage; Van Buren concedes that her "Fourth Amendment Excessive Force claim and the state law claim of Assault and Battery . . . are not applicable to Defendants Sage or Sharp." Pl.'s Resp. 13. Thus, Counts I and IV of Van Buren's amended complaint do not pertain to Sharp or Sage. *See* Pl.'s Am. Compl. ¶¶ 29–33, 48–54. Van Buren also acknowledges that "Counts II and III . . . do not apply to Defendants Sharp or Sage[,]" presumably because those counts are specifically directed at Crawford County and the City of Grayling. Pl.'s Resp. 14; *see also* Pl.'s Am. Compl. ¶¶ 34–47.

So the only claims Van Buren can potentially maintain against Sharp or Sage are her claims for gross negligence (Count V), warrantless entry (Count VI), violation of due process

(Count VII), section 1983 conspiracy (Count VIII), and abuse of process (Count IX). The viability of each will be considered in turn.

**A**

Before Van Buren's claims can even be addressed, though, it remains unresolved whether Sharp and Sage are entitled to absolute immunity. In their motion to dismiss, Sharp and Sage argue that Van Buren's claims "do not survive the absolute immunity accorded to social workers." Defs.' Mot. 22.

It is true that social workers like Sharp and Sage "are entitled to absolute immunity when they engage in conduct 'intimately associated with the judicial phase of the criminal process.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (quoting *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011)). When applied, the absolute immunity defense "provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly." *Kovacic*, 724 F.3d at 694 (quoting *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004)). But the Sixth Circuit was careful to limit the applicability of absolute immunity to situations where social workers act "in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Kovacic*, 724 F.3d at 694 (emphasis in original) (citation omitted).

In addressing the applicability of absolute immunity to social workers, the Sixth Circuit has indicated that "[f]iling [a] complaint for abuse, neglect, and temporary custody . . . is clearly prosecutorial in nature . . . and thus protected by absolute immunity." *Id.* On the other hand, when social workers act to "remove[] . . . children from the home," they act "in a police capacity

rather than as legal advocates[,]" and absolute immunity does not apply. *Id.* (citations omitted). Turning now to Van Buren's claims.

**B**

Much of the parties' briefing is directed at whether Van Buren can succeed against Sharp or Sage on her gross negligence claim. Van Buren alleges that "gross negligence is a viable and independent cause of action that . . . must be permitted to move forward." Pl.'s Resp. 14. In her amended complaint, Van Buren alleges that Sharp and Sage "had a duty to exercise reasonable care" under Mich. Comp. Laws § 691.1407. Pl.'s Am. Compl. ¶ 61. Van Buren argues that Sharp and Sage violated this duty, acting with gross negligence, and therefore their conduct is actionable.

The Sixth Circuit recently addressed this issue in *Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011), where the plaintiff indicated that "defendants' alleged use of excessive force constituted gross negligence" under Michigan law, which the plaintiff pled as an independent cause of action pursuant to Mich. Comp. Laws § 691.1407. *Id.* at 756. The Sixth Circuit concluded, however, that "[a]lthough establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, *it is not an independent cause of action*." *Id.* (emphasis added). Accordingly, the Sixth Circuit reversed the lower court's decision to allow a gross negligence claim to progress past the summary judgment stage. *Id.* ("Therefore, the district court erred in not dismissing plaintiff's state-law gross-negligence claim."). This Court will not make the same mistake, and Van Buren's gross negligence claim, Count V of her amended complaint, will be dismissed.[2]

---

[2] Because at this point only Sharp and Sage have challenged the viability of Van Buren's gross negligence claim, the claim will be dismissed as to only those Defendants and not in its entirety.

**C**

Count VI of Van Buren's amended complaint alleges that, among others, Sharp and Sage violated the law by entering Reddie's apartment without a warrant or his consent. *See* Pl.'s Am. Compl. ¶¶ 64–69. While it appears undisputed that the Defendants entered Reddie's home without his consent, it is not true that these individuals acted without a warrant. This claim, as it pertains to Sharp and Sage, will be dismissed.

**1**

As indicated above, if Sharp and Sage acted as legal advocates when entering Reddie's apartment, their conduct is protected by absolute immunity. However, the Sixth Circuit has noted that when social workers act to remove children from their home, they do not act as legal advocates, but rather "in a police capacity . . . ." *Kovacic*, 724 F.ed at 694. So absolute immunity does not protect Sharp or Sage from this claim.

**2**

While absolute immunity does not apply, Sharp and Sage may yet be cloaked in qualified immunity. Courts "can resolve the qualified immunity inquiry based on a pre-answer motion to dismiss" because "[q]ualified immunity is an affirmative defense, and a plaintiff does not need to anticipate it to state a claim." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (citation omitted). Once the defense is raised, however, the plaintiff "must plead the violation of a clearly established constitutional right." *Id*. (citation omitted). Thus, this Court may dismiss a complaint based on qualified immunity "if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Id*. (citation omitted).

A defendant enjoys qualified immunity "unless the facts alleged . . . when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Kovacic*, 724 F.3d at 695 (citation omitted). Van Buren has not established the violation of a constitutional right with her sixth claim, and so Count VI of her amended complaint—as it pertains to Sharp and Sage—will be dismissed based on qualified immunity.

The Fourth Amendment protects against unreasonable searches and seizures, and government entry into a private home is considered a search implicating the Fourth Amendment. *See O'Donnell v. Brown*, 335 F. Supp. 2d 787, 801 (W.D. Mich. 2004) (collecting cases); *see also United States v. United States District Court*, 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment. *O'Donnell*, 335 F. Supp. 2d at 801.

The Rules governing Michigan Courts allow an officer to "remove a child from the child's surroundings and take the child into protective custody" without a court order "if, after investigation, the officer has reasonable grounds to believe that . . . the child's immediate removal from those surroundings is necessary to protect the child's health and safety." Mich. Ct. R. 3.963(A)(1). But while this court rule "may authorize the seizure of a child in the circumstances" described, the rule does "not give the police or anyone else the authority to enter a home to effect the seizure. State statutes and regulations cannot be construed to displace the protections of the United States Constitution—even when the state acts to protect the welfare of children." *O'Donnell*, 335 F. Supp. 2d at 801–02. Thus, the entry itself into Reddie's home must satisfy the Fourth Amendment, which generally requires a warrant; "the Fourth

Amendment applies to social workers, as it does to all other officers and agents of the state whose requests to enter, however benign or well-intentioned, are met by a closed door. There is . . . no social worker exception to the strictures of the Fourth Amendment." *Id*. at 802 (brackets omitted) (collecting cases).

Of course, Sharp and Sage did not enter Reddie's home empty-handed; they had the Order signed by Judge Burmeister. The question becomes, then, whether the Order satisfies the warrant requirements of the Fourth Amendment such that Sharp and Sage's entry was not warrantless.[3]

The Warrant Clause of the Fourth Amendment "contains four textual requirements, each of which places restrictions on the issuance of a warrant." *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 440 (6th Cir. 2006) (emphasis omitted). Those requirements are as follows: "[N]o Warrants shall issue, but upon [1] probable cause, [2] supported by Oath or affirmation, and [3] particularly describing the place to be searched, and [4] the persons or things to be seized." U.S. Const. amend. IV. Here, Judge Burmeister's order satisfied all four warrant requirements.

First, the order was based upon sufficient probable cause. A warrant may be issued only if probable cause can be demonstrated such that "a search is justified." *United States v. Johnson*, 457 F. App'x 512, 517 (6th Cir. 2012) (citations omitted). An adjudicator issuing the warrant must have a "substantial basis for concluding that probable cause existed." *Id*. Probable cause

[3] It is irrelevant that the Order was entitled "Order to Take Child(ren) Into Protective Custody" rather than labeled officially as a warrant. Indeed, Black's Law Dictionary defines "warrant" as "A writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure." *Black's Law Dictionary* 1616 (8th ed. 2004). A "search warrant" is likewise defined as "A judge's written order authorizing a law-enforcement officer to conduct a search of a specified place and to seize evidence." *Id*. at 1379. Here, the Order was in writing, signed by a judge, and authorized "Grayling City Police, Crawford County Sheriff's Deputy, or Crawford County Department of Human Services Worker" to "enter" a specific residence to take a specific child "into protective custody." Order 2. So long as it satisfies the Warrant Clause's other requirements, the Court concludes that the Order is properly considered a warrant.

exists where, given the totality of the circumstances, "there is a reasonable grounds for the belief of wrongdoing, which is 'supported by less than prima facie proof but more than mere suspicion.'" *Id*. at 516 (collecting cases).

In the Petition, Sharp described the smell of marijuana emanating from Reddie's apartment when police arrived to investigate the domestic disturbance, along with the "screaming and arguing." Petition 2. Sharp indicated that "Reddie admitted that he was smoking marijuana inside his apartment" in the presence of his minor son, and that Reddie "was observed to be in possession of a marijuana pipe." *Id*. Finally, Sharp outlined how Reddie made "verbal threats against the officer that responded to the disturbance call" and "also threaten[ed] to leave town." *Id*. He also affirmed that "the statements in [the Petition] are true to the best of [his] information, knowledge, and belief." *Id*. at 1.

Sharp's affirmation thus contained numerous assertions of fact supporting his conclusion that Reddie's son was living in an unsafe environment and should be removed to protective custody. And although Sharp's statements were based entirely on information he received from other officers, "social workers . . . are entitled to rely upon information they receive from other officers, and are insulated from civil liability in the event the information they relied upon is defective."[4] *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 860 (6th Cir. 2012) (internal quotation marks, brackets, ellipsis, and citation omitted). So even if it turns out the reporting officer was incorrect about Reddie's marijuana use, Sharp was entitled to rely upon the

[4] Moreover, the officer's eye-witness statements, communicated to Sharp, constitute trustworthy information justifying a reasonable belief that Reddie's son was in danger. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (establishing the "general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity."); *see also Peet v. City of Detroit*, 502 F.3d 557, 564 (6th Cir. 2007) (witness's "eye witness statements" constituted "trustworthy information justifying a reasonable belief" that a crime had occurred or was occurring).

information he received, and that information established probable cause to support the Order permitting entry into Reddie's home to take his son into protective custody.

The other three warrant requirements are easily satisfied here. The Order was supported by Sharp's affirmation, contained in the Petition: "I declare that the statements in this petition are true to the best of my information, knowledge, and belief." Petition 1. The Order then particularly described the place officers and DHS employees were "authorized to enter"—"597 meadows Drive Apt. 5, Grayling, MI 49738"—and the person to be seized, Reddie's minor son (including the boy's name and date of birth). Order 2.

The Order satisfies all of the requirements of the Warrant Clause, and thus Van Buren cannot demonstrate a constitutional violation stemming from warrantless entry because the entry of Reddie's apartment was pursuant to a valid warrant. Both Sharp and Sage are entitled to qualified immunity on this claim.

**D**

Van Buren's seventh claim alleges that Sharp or Sage violated his Fourteenth Amendment due process rights because "the United States Constitution recognizes a substantive fundamental right to raise one's child" and "also requires that prior to one's parental rights being terminated, that adequate notice and a meaningful opportunity [to] be heard be afforded . . . ." Pl.'s Am. Compl. ¶¶ 72, 73. This claim also fails because Van Buren has not pled facts sufficiently demonstrating a constitutional violation.

**1**

As with the warrantless entry claim, Sharp and Sage are not entitled to absolute immunity on Van Buren's due process claims. *See Pittman*, 640 F.3d at 726–27 (analyzing due process claims against social worker under qualified immunity rather than absolute immunity, as due

process claims involved "alleged deprivation of . . . 'fundamental liberty interest in family integrity'" which implicated social worker's "conduct unrelated to her role as an advocate before the juvenile court."). So the Court will address whether qualified immunity bars Van Buren's due process claims against Sharp and Sage.

**2**

Again, to overcome qualified immunity, Van Buren must allege facts that, "when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Kovacic*, 724 F.3d at 695 (citation omitted). Van Buren has not done so.

**i**

Substantive due process "serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman*, 640 F.3d at 728 (citation omitted). Substantive due process claims may be "loosely divided" into two categories: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Id*. (collecting cases).

Van Buren brings her substantive due process claim under both theories: "Reddie had a fundamental liberty interest in family integrity"; and "[a]ctions of a government official towards a citizen which 'shock the conscience' offend substantive due process." Pl.'s Resp. 18.

Van Buren is correct that "under the Fourteenth Amendment, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008) (brackets and citation omitted). But the right is "neither absolute nor unqualified." *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013) (citation omitted).

Although Van Buren explains in her brief that government action that "shock[s] the conscience" offends substantive due process, *see* Pl.'s Resp. 18, she never indicates how Sharp or Sage acted in such a way here. Indeed, after generally mentioning that shocking government action may violate due process, Van Buren moves on to discuss Reddie's "fundamental liberty interest" in the integrity of his family, which without doubt implicates the first category of substantive due process claims outlined above, not the category involving shocking conduct. To overcome Sharp's or Sage's qualified immunity defense, Van Buren "must plead the violation of a clearly established constitutional right." *Schultz*, 429 F.3d at 589. Her vague allegations that Sharp's and Sage's "actions were egregious and arbitrary and 'shocks the conscience' and violates the decencies of civilized conduct[,]" Pl.'s Am. Compl. ¶ 76, is not the factual content necessary to draw the reasonable inference that either Sharp or Sage is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Van Buren's substantive due process claim as it relates to Sharp and Sage—based upon conduct that "shocks the conscience"—is without merit.

So, too, is Van Buren's claim that Sharp or Sage violated Reddie's substantive due process rights by interfering with the integrity of his family. The Sixth Circuit's decision in *Pittman* controls here and compels the contrary conclusion.

In *Pittman*, a father, Ricky Pittman, brought a §1983 action against the Cuyahoga County Department of Children and Family Services along with the primary social worker for Pittman's son, who had been removed from his mother's custody by Cuyahoga Family Services. *Pittman*, 640 F.3d at 718. Pittman claimed the defendants had "unconstitutionally deprived him of his fundamental right to family integrity, failed to accord him requisite due process before awarding custody to [his son's grandmother], and acted wantonly and recklessly in the state court custody proceedings." *Id.* at 722. Pittman argued that the social worker made "detrimental

misrepresentations about Pittman in internal [Cuyahoga Family Services] proceedings," and as a result Cuyahoga Family Services determined he was unfit to be a caregiver to his son. *Id.* at 729.

Nevertheless, the court in *Pittman* found Pittman's substantive due process arguments unpersuasive because "to the extent that Pittman [had] suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the social worker]." *Id.* The Sixth Circuit reasoned that under Ohio law juvenile courts make custody determinations, thus Child Services and social workers are "merely [parties] to the juvenile court proceedings, tasked with presenting to the juvenile court [their] recommendation as to the appropriate course of action . . . ." *Id.* Because the juvenile court held "the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right," and the social worker's conduct did not violate Pittman's substantive due process rights. *Id.*

Van Buren argues that *Pittman* does not apply here for two reasons: (1) *Pittman* involved a motion for summary judgment, not a motion to dismiss; and (2) *Pittman* was "based upon *Ohio law*," not Michigan law. Pl.'s Resp. 19 (emphasis in original).

Both of these arguments are foreclosed by the Sixth Circuit's decision in *Kolley*. There, the court addressed, under Michigan law, plaintiffs' claims that the conduct of social workers deprived them of substantive due process. The court concluded that despite the applicability of Michigan law, and the fact that the issue was raised on defendant's motion to dismiss, "[t]he *Pittman* analysis controls here." *Kolley*, 725 F.3d at 586. For although *Pittman* "involved Ohio law, Michigan courts also have the ultimate decision-making power on custody and guardian appointment . . . ." *Id.* As in Ohio, only a Michigan juvenile court can violate a plaintiff's substantive due process rights by interfering with the fundamental right to family integrity.

Moreover, whether Reddie's fundamental right to family integrity was even violated is dubious. As Sharp and Sage indicate, Reddie was shot and killed before his minor child was removed from his home; there was never any government action that interfered with his fundamental rights (concerning the removal of his minor child). For this reason, and based on the Michigan court's ultimate decision-making power (pursuant to *Pittman*), Van Buren's substantive due process claim fails.

**ii**

Van Buren's procedural due process claim against Sharp and Sage is also without merit. Procedural due process "protect[s] persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Pittman*, 640 F.3d at 729 (citation omitted). To establish a violation of procedural due process rights, Van Buren must demonstrate a deprivation "of a protected liberty or property interest," and "that such deprivation occurred without the requisite due process of law." *Id*. (citation omitted).

Van Buren's procedural due process claim fails for the same reason that a portion of her substantive due process claim failed—there was never any deprivation of Reddie's liberty interest related to his parent-child relationship because Reddie's minor son was never removed from his home before Reddie's death.

Concerning Sharp or Sage, Van Buren has not established any violations of Reddie's due process rights. Thus, Sharp and Sage are entitled to qualified immunity on Van Buren's due process claims.

**E**

Van Buren also brings a claim against Sharp and Sage for conspiracy under § 1983. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by

unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (citation omitted). To prevail on such a claim, Van Buren must show that (1) a "single plan" existed; (2) that Sharp or Sage "shared in the general conspiratorial objective" to deprive Reddie of his constitutional rights; and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to Reddie. *Id*. (citation omitted).

To support her conspiracy claim, Van Buren alleges three specific actions: (1) the "defendants had an agreement among themselves to deprive William Reddie of his relationship with his young son"; (2) the "Defendants had a plan to wrongfully accuse William Reddie of child abuse/endangerment"; and (3) the "Defendants had a plan to go to William Reddie's residence and take William Reddie's son from him despite there being no lawful reason to do so." Pl.'s Am. Compl. ¶¶ 82–84.

Of course, "[i]t is necessary for a § 1983 claim that a constitutional deprivation be alleged and proved. A conspiracy standing alone is insufficient." *Smith v. Oakland Cnty. Circuit Court*, 344 F. Supp. 2d 1030, 1067 (E.D. Mich. 2004) (citation omitted). Yet Van Buren has demonstrated no constitutional deprivations resulting from Sharp's or Sage's conduct. Thus, her § 1983 conspiracy claim necessarily fails.

**F**

Finally, Van Buren alleges a state law claim for abuse of process. On this claim, both Sharp and Sage are protected by absolute immunity.

Van Buren explains that "Defendants Sage and Sharp opened a case and/or caused a case to be opened or continued against Reddie when there was no evidence to support such case and when they failed to undertake a minimal investigation to support such action. Furthermore, Defendants Sage and Sharp knew or should have known that the allegations that Reddie was

smoking marijuana in front of his son were not true." Pl.'s Resp. 17–18. But as previously explained, both Sharp and Sage were entitled to rely "upon information they receive[d] from other officers, and are insulated from civil liability in the event the information they relied upon is defective." *Andrews*, 700 F.3d at 860 (internal quotation marks, brackets, ellipsis, and citation omitted). So whether Sharp and Sage should have known Reddie was not smoking marijuana is irrelevant; they were informed that Reddie was smoking marijuana by other law enforcement officers, and Sharp and Sage were entitled to rely on that information.

More importantly, the Sixth Circuit has been very clear that social workers "are entitled to absolute immunity when they engage in conduct 'intimately associated with the judicial phase of the criminal process.' " *Kovacic*, 724 F.3d at 694 (citation omitted). And "[f]iling [a] complaint for abuse, neglect, and temporary custody . . . is clearly prosecutorial in nature . . . and thus protected by absolute immunity." *Id*. So when Sharp or Sage opened a case against Reddie, or continued such a case against Reddie, they were clearly acting in their capacity as legal advocates, and thus enjoy absolute immunity from Van Buren's abuse of process claim.

**G**

Van Buren's claims will be dismissed as they pertain to both Sharp and Sage. Gross negligence is not recognized as an independent cause of action under Michigan law. Sharp and Sage are entitled to qualified immunity for Van Buren's claims for warrantless entry, violation of due process, and civil conspiracy because Van Buren has not demonstrated the violation of a constitutional right (at least concerning Sharp and Sage, that is). And Sharp and Sage are entitled to absolute immunity against Van Buren's abuse of process claim, because this claim

implicates conduct that was clearly prosecutorial in nature. Sharp and Sage's motion to dismiss will be granted in its entirety.[5]

**IV**

Accordingly, it is **ORDERED** that Sharp and Sage's motion to dismiss, ECF No. 20, is **GRANTED**.

It is further **ORDERED** that Van Buren's claims against Sharp and Sage are **DISMISSED** with prejudice.

Dated: May 29, 2014

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 29, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

[5] At the end of her response to Sharp and Sage's motion to dismiss, Van Buren indicates that "[i]n the event that the Court agrees with Defendants' position, then Plaintiff should be permitted to amend her Complaint." Pl.'s Resp. 21. Van Buren did not file a motion requesting leave to amend or give any indication in her response on what basis she should be allowed to amend. As the Sixth Circuit has recognized, "a bare request in an application to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *PR Diamonds, Inc. v. Chandler*, 91 F. App'x 418, 444 (6th Cir. 2004) (citations omitted). Because the plaintiff in *Chandler* did not formally file a motion requesting leave to amend, "the district court was within its discretion to withhold granting Plaintiffs an opportunity to amend the pleadings." *Id*. Pursuant to this authority, Van Buren will not receive an opportunity to amend her amended complaint concerning Sharp and Sage.