UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE VAN BUREN, Personal Representative
for the ESTATE OF WILLIAM REDDIE, deceased
and WILLIAM REDDIE,

        Plaintiff,                      Case No. 13-cv-14565

v.                                              Honorable Thomas L. Ludington

CRAWFORD COUNTY, CITY OF GRAYLING,
JOHN KLEPADLO, and ALAN SOMERO,
in their individual and official capacities,

        Defendants.

_____/

**ORDER DENYING MOTIONS TO BAR EXPERT TESTIMONY AND DENYING PLAINTIFF'S MOTION TO ALLOW TESTIMONY OF NEWLY DISCOVERED WITNESS**

On August 3, 2016, the Court entered an order concluding that Defendants were entitled to summary judgment based on the available record but which withheld entry of judgment pending an evidentiary hearing to determine whether Defendants spoliated evidence. ECF No. 84. The second day of the evidentiary hearing will be held on October 31, 2016. On September 29, 2015, Defendants filed a motion to bar the expert report and testimony of Plaintiff's witness Edward J. Primeau. ECF No. 73. On October 2, 2015, Plaintiff filed a motion to strike several of Defendants' expert witnesses. ECF No. 74. Finally, on September 11, 2016, Plaintiff filed a motion for leave for a newly discovered witness to testify as the evidentiary hearing. ECF No. 101. Because the outcome of these motions may impact the testimony at the evidentiary hearing, they will be addressed now.

**I.**

The factual allegations surrounding the fatal shooting which gave rise to this action, including the reasons why an evidentiary hearing was scheduled on the question of whether Defendants spoliated evidence, are summarized in the Court's August 3, 2016, order. ECF No. 84. That statement of facts will be adopted as if restated fully herein.

## II.

### A.

Defendants argue that Mr. Primeau should be barred from testifying as an expert because he is not qualified and because his opinions are not based on a reliable factual foundation. ECF No. 73. Plaintiff argues that Mr. Wesley Smith should be barred from testifying as an expert because Defendants have not disclosed an expert report and because Mr. Smith is not qualified. ECF No. 74. Plaintiff further requests that several other defense experts be stricken for failure to furnish a report. *Id.* Finally, Plaintiff requests that Robert Haertel be allowed to testify at the evidentiary hearing despite not being disclosed to Defendants until September 11, 2016. ECF No. 101.

#### 1.

According to Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court must consider proffered expert testimony by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). Thus, proffered expert testimony is admissible only if it is reliable and relevant. *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000).

Rather than analyzing the witness's qualifications in the abstract, the trial court must determine whether the witness's "qualifications provide a foundation for [the] witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). There is not a "definitive checklist," but relevant questions include whether the theory or technique can be tested, whether it is subject to peer review and publication, whether the technique has a high rate of error, and whether the technique is generally accepted within the "relevant scientific community." *Daubert*, 509 U.S. at 592–95.

Defendants argue that Mr. Primeau is unqualified to testify as an expert. Defendants emphasize Mr. Primeau's lack of formal education regarding computer forensics or audio/visual technology and cite to *Jones v. Union Pac. R.R. Co.*, a recent case where the court ruled that Mr. Primeau was not qualified to offer an expert opinion. No. 12 C 771, 2015 WL 5252958, at *10 (N.D. Ill. Sept. 8, 2015).

Plaintiffs are calling Mr. Primeau to testify regarding whether there is evidence that the Defendants tampered with the recordings allegedly created by Officer Somero's equipment. An expert can be qualified even without a relevant diploma. *Zuzula v. ABB Power T & D Co.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003). Likewise, an expert "need not have complete knowledge about the field in question." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981). Rather, the expert "need only be able to aid the jury in resolving a relevant issue." *Id.* In fact, even "lack of hands-on experience is not fatal to a qualification inquiry if the focus of the opinion is within the scope of the expert's special knowledge." *Zuzula*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003) (citing *Jahn v. Equine Servs.*, *PSC*, 233 F.3d 382, 389 (6th Cir. 2000)). If the witness has "the minimal qualifications" necessary to qualify as an expert, then the trier of fact, not the judge, should determine the weight to give to the expert's testimony. *Mannino*, 650 F.2d at 851.

Mr. Primeau has sufficient "knowledge, skill, experience, training, [and] education" to testify. Fed. R. Evid. 702. Mr. Primeau has extensive experience with audio authentication. He has been an audio engineer since 1979, which involves producing audio recordings. Primeau C.V. at 2, ECF No. 73, Ex. 5. In 1987, he founded Primeau Productions, which offers audio and video enhancement, authentication, and transcription services. *Id.* According to Mr. Primeau, he has conducted hundreds of audio forensic investigations, including an audio forensic examination with the FBI. *Id.* Further, Mr. Primeau is a member of several relevant professional associations, including the Audio Engineering Society and the American College of Forensic Examiners. *Id.* at 4. Mr. Primeau has provided testimony in numerous legal cases regarding whether audio recordings were authentic or had been tampered with. *Id.* at 7–25. In two particularly relevant cases, he testified regarding whether a message on an answering machine

had been irrevocably erased and whether a nightclub owner had erased digital video surveillance. *Id.* at 7–8 (*Fitzgerald v. Skobeloff* and *People ex rel. City of Chicago v. Le Mirage, Inc.*).

Like in past cases where Mr. Primeau has provided expert testimony, he was retained here to analyze whether the inoperable compact disc that Defendants provided to Plaintiff had been tampered with and whether there was other evidence of misconduct with audio recordings. Defendants argue that Mr. Primeau does not have sufficient experience as a computer engineer to testify regarding the operation of the Defendants' recording system. But Mr. Primeau testified that he has conducted many "evidence recovery" assignments. Primeau Dep. at 11, ECF No. 85, Ex. L. In fact, he testified that he has received at least some specialized training in evidence recovery from audio/visual surveillance systems. *Id.* at 11–12. Given Mr. Primeau's many years of experience and the large number of cases for which he has provided authentication and evidence recovery assistance, Mr. Primeau possesses the qualifications necessary to "aid the jury in resolving a relevant issue." *Mannino v. Int'l Mfg. Co.*, 650 F.2d at 850.[1] He is qualified to testify.

Defendants further argue that, even if Mr. Primeau is qualified to offer expert opinions, his testimony should still be excluded because it is not necessary for the jury to understand the case and is based on unsupported speculation. Expert testimony is admissible if the subject matter is "'beyond the understanding of the average layman.'" *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir.1990)). *See also United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) ("Properly qualified expert

---

[1] Defendants cite *Jones v. Union Pac. R.R. Co.*, 2015 WL 5252958, at *10, in further support of their contention that Mr. Primeau is not qualified. In *Jones*, the court concluded that Mr. Primeau was not qualified to testify regarding his forensic analysis of several videos. However, the *Jones* court did not conclude that Mr. Primeau was unqualified to testify regarding forensic audio analysis and even admitted that Mr. Primeau had experience with audio analysis. *Id.* at 11. Because this case involves different facts and because *Jones*, an unpublished district court opinion from another circuit, holds no precedential value, the Court declines to find that Mr. Primeau is unqualified.

testimony is generally admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue.") (citations omitted).

Mr. Primeau's testimony will assist the jury in determining whether the recordings from Defendant Somero's SD card should exist. Although Defendants argue that Mr. Primeau's opinion that the recordings should exist is based on no evidence, his deposition makes clear that he will testify that the metadata he recovered from the compact disc indicated where the recordings originated. Primeau Dep. at 27. Mr. Primeau has significant experience interpreting metadata. *Id.* at 83. He further testified, based on his technical experience, that even if Officer Somero's microphone was malfunctioning, a recording file of some kind should still have been created. *Id.* at 92–93. Thus, Mr. Primeau is basing his conclusion that the recordings were intentionally deleted on evidence he reviewed and his own expertise. Defendants might disagree with that conclusion or believe that alternative explanations exist, but those contentions should be explored during cross-examination. This testimony involves technical information which a typical juror is unlikely to be familiar with, and thus Mr. Primeau's testimony will be helpful.

Defendants further argue that Mr. Primeau should be barred from testifying that the recording system in Officer Somero's car was functional on the day in question. They contend that Mr. Primeau is not basing his opinion on an investigation of the system, that his testimony is not necessary for the average juror to understand the issue, and that he relies on incorrect factual assumptions. As already explained, Mr. Primeau is basing his opinion on evidence and documentation that he was provided and helped recover. The fact that Mr. Primeau did not personally test the missing SD Card or the now-replaced recording system might lessen the weight which should be given to his testimony, but does not disqualify him. *See Jahn*, 233 F.3d at 389 (because expert was relying on medical records provided to him and his professional

experience, his lack of "hands-on familiarity" with the surgery was not relevant to admissibility). And although the conclusions Mr. Primeau reaches are easily understandable by average jurors, the process by which he arrives at them, which involves an analysis of technical data and reliance on his experience with similar recording systems, is not. Defendants vigorously argue that Mr. Primeau's testimony should be excluded because he based his conclusions, in part, on recordings recovered from car one, which Defendants assert was not Officer Somero's vehicle. Mr. Primeau admitted this discrepancy, but explained that the recordings from car one informed his conclusion that the recording system, as a whole, was working on the day in question. *See* Primeau Dep. at 29–39.[2] Mr. Primeau has offered a sufficient factual basis for his findings to testify.

Defendants next argue that Mr. Primeau should be barred from testifying regarding police procedures or chain of custody practices. Mr. Primeau admits that he is not a police procedures expert. *Id.* at 17–19. Accordingly, he will not be permitted to offer an expert opinion on police procedures or chain of custody practices generally. However, because Mr. Primeau has investigated the compact disc provided by Defendants, he will be allowed to opine about whether there is evidence that the integrity of the recording was compromised in this specific case.

Finally, Defendants argue that Mr. Primeau should be barred from offering an opinion regarding whether the recording system in Sheriff Deputy Klepadlo's car was working. Mr. Primeau's conclusion regarding the operability of the Crawford Sheriff Department's recording system seems to be based solely on the lack of documented repair requests. Primeau Dep. at 63;

---

[2] Mr. Primeau also testified that there was some evidence that Pro-Vision, the company which the Grayling Police Department had contracted with to provide the recording systems, made "field changes" to their software. Primeau Dep. at 31–32, 54–56. The Pro-Vision software has "fields," which are boxes that are populated with information regarding the date of the recording, where the recording originated, and similar information. *Id.* Because there is some evidence that Pro-Vision changed some of these fields, Mr. Primeau testified that it was possible that the recordings purportedly from car one were actually from Officer Somero's car. Defendants strongly contest this line of reasoning, but, as already stated, these factual disputes should be resolved during cross-examination.

Primeau Rep. at 55. Mr. Primeau did nothing besides review documents. He did not conduct an inspection of the system or search for any recordings. His conclusion is based on a simple inference that, because the Crawford Sheriff Department did not complain about malfunctioning equipment, the system was working. This is not a technical issue which requires expert explanation. The fact-finder is capable of accepting or rejecting the inference Mr. Primeau made by reviewing the original documents themselves. Accordingly, Mr. Primeau will be barred from testifying as to the operability of the recording system in Sheriff Deputy Klepadlo's car. Defendants' motion to bar Mr. Primeau's expert testimony will be denied, but the scope of his testimony will be cabined.

**2.**

Plaintiff has also filed a motion to strike Defendants' experts. ECF No. 74. She argues that Defendants did not name Detective Sergeant Wesley Smith as a potential expert until after the deadline for expert disclosures and that Detective Smith did not provide an expert report. Plaintiff further argues that no reports were filed with respect to a number of other potential defense expert witnesses.

Under Federal Rule of Civil Procedure 26(a)(2), the parties must disclose any witnesses retained to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(A). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," such a disclosure "must be accompanied by a written report – prepared and signed by the witness" containing:

> (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

- 9 -

    (ii)    the facts or data considered by the witness in forming them;

    (iii)    any exhibits that will be used to summarize or support them;

    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). In interpreting Federal Rule of Civil Procedure 26(a), the Sixth Circuit has explained that "a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *R. C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (internal quotation and citation omitted).

    First, Plaintiff argues that Detective Sergeant Wesley Smith should not be allowed to testify as an expert because Defendants named Detective Smith as an expert after the time for expert disclosures had ended. Under the Court's April 15, 2015, scheduling order, Defendants' expert disclosures were due on May 22, 2015. Defendants admit that the possibility of Detective Smith testifying as an expert was not disclosed until July 1, but assert that Detective Smith's testimony is meant only to rebut the proposed testimony of Plaintiff's expert, Mr. Primeau. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(iii), expert testimony that is meant "solely to contradict or rebut evidence on the same subject matter" presented by the other party must be filed within 30 days after the other party's disclosure. Defendants received Mr. Primeau's report on June 5, 2015 and identified Detective Smith as a potential expert witness on

July 1, 2015. Because Detective Smith's testimony is meant to directly respond to Mr. Primeau's testimony, and because Detective Smith was disclosed within 30 days of Plaintiff's disclosure of the substance of Mr. Primeau's testimony, Defendants' disclosure was timely.

Plaintiff further argues that Detective Smith should alternatively be stricken as an expert because Defendants did not provide a written expert report. Federal Rule of Civil Procedure 26(a)(2)(B) does require some expert witnesses to provide a report, but only "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *See also Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007). Detective Smith is employed as an investigator with the Michigan State Police Computer Crimes Division. He was not retained solely to provide expert opinion in this case. Smith Dep. at 50–52, ECF No. 85, Ex. M. And although Detective Smith has testified as an expert before, the vast majority of his job is spent providing electronic forensic services to the Michigan State Police in its computer crimes division. *Id.* at 24–27, 51–52. Accordingly, he does not fall within the 26(a)(2)(B) report requirement.

Because Detective Smith was not required to provide a report, Federal Rule of Civil Procedure 26(a)(2)(C) applies, which merely requires the expert disclosure to provide the subject matter on which the expert will present evidence and a summary of the facts and opinions which the witness will proffer. Defendants' initial disclosure clearly indicates that Detective Smith will testify regarding whether the missing audio files were intentionally deleted, presumably in response to Mr. Primeau's report. ECF No. 74, Ex. A. Defendants then provided, on August 28, 2015, Detective Smith's affidavit, which lays out his opinions and conclusions in more detail. ECF No. 62, Ex. 7. Although that disclosure occurred outside the 30 day window of 26(a)(2)(D)(iii), the disclosure occurred well before Plaintiff's deposition of Detective Smith on

October 16, 2015. Further, Plaintiff has now had over a year to digest and prepare to rebut Detective Smith's presumptive testimony. Accordingly, Plaintiff was not prejudiced to the extent Detective Smith's 26(a)(2)(C) disclosure was untimely.

Finally, Detective Smith is qualified to testify as an expert. An expert can be qualified primarily through experience. *Mannino*, 650 F.2d at 850. Detective Smith has received over 500 hours of training in technological forensics. Smith C.V., ECF No. 74, Ex. C. He has also led the Michigan State Police Computer Crimes office since 2012, *Id.*, so he has significant related work experience as well. *See* Smith Dep. at 40–41. The crucial question is whether the testimony will aid the jury in "resolving a relevant issue." *Mannino*, 650 F.2d at 850. Courts have consistently allowed police officers to testify as experts when their testimony is relevant and reliable. *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006). Detective Smith has sufficient training and experience with technologically-based forensics to offer relevant and reliable testimony to the jury.

Second, Plaintiff makes the perfunctory argument that numerous other proposed defense experts did not submit expert reports. Federal Rule of Civil Procedure 26(a)(2)(B) only requires an expert to submit a report if the "witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Plaintiff has not individually identified the additional experts to be stricken and has not shown that reports are required to be submitted for these experts. Absent a more specific explanation of why these unnamed experts should have provided a report, the experts will not be stricken. In short, Plaintiff's motion to strike defense experts will be denied.

**3.**

Finally, Plaintiff has moved to allow Robert Haertel to testify at the evidentiary hearing. ECF No. 101. Plaintiff argues that she did not become aware of Mr. Haertel's potentially relevant testimony until September 10, 2016. Accordingly, Plaintiff asserts that good cause exists to allow her to amend her initial disclosures so that Mr. Haertel can testify at the evidentiary hearing.

Plaintiff attaches to her motion the email through which Mr. Haertel informed Plaintiff of his experience. Email, ECF No. 101, Ex. A. In that email, Mr. Haertel explains that he was the process server who served Defendants in this case. *Id.* When Mr. Haertel served the Crawford County Sheriff's Department, he encountered problems with an unnamed sergeant. *Id.* According to Mr. Haertel, the sergeant indicated that a surveillance camera which filmed a portion of the sheriff's department was for police benefit only and that any negative evidence on the recording would get lost if requested by an outside party. *Id.* Mr. Haertel makes clear that the statement was made by an unidentified older sergeant, not any of the named Defendants. *Id.* In the email, Mr. Haertel also asserted that a secretary at the Grayling City Hall made a similar comment about how incriminating recordings would be lost if asked for. *Id.*

Defendants argue that Plaintiff's motion should be denied because, among other reasons, Mr. Haertel's testimony is not relevant to the issues being addressed in the evidentiary hearing. The Court agrees. Plaintiff should be granted leave to amend its initial disclosures such that Mr. Haertel may testify at the hearing if, pursuant to Federal Rule of Civil Procedure 16(b), good cause exists. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). However, because Mr. Haertel's testimony is not relevant to any issue contested in the hearing, good cause does not exist. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Ev. 401. Mr. Haertel will not testify about the behavior of any named Defendant. Mr. Haertel's testimony will focus solely on statements of an unnamed sergeant with the Crawford County Sheriff's Department and an unnamed secretary at Grayling City Hall regarding misconduct with video recordings. The statements were not made by any of the named Defendants in this case. There is no evidence that the secretary about whom Mr. Haertel will testify has any relation to the police department. Further, Mr. Haertel's testimony has nothing to do with recording systems in police vehicles, which is the issue that will be contested at the evidentiary hearing. At best, Mr. Haertel's testimony would suggest that the Defendants are willing to purposefully lose video recordings from surveillance equipment in the Grayling City Hall and Crawford County Police Department. But that testimony is not probative of whether misconduct occurred with the recording systems in the police vehicles. The evidence spoliation claims involve completely different recording systems.

Plaintiff argues that, despite the tangential relevance of the testimony, Mr. Haertel should be allowed to testify because the statements made by employees of the Defendants indicate a culture of evidence destruction within the Defendants' offices. That slight probative value, however, is insufficient to establish good cause for leave to amend. Thus, Plaintiff's motion will be denied.

### III.

Accordingly, it is **ORDERED** that Defendants' motion to bar the expert testimony of Mr. Primeau, ECF No. 73, is **DENIED.**

It is further **ORDERED** that Plaintiff's motion to strike expert witnesses, ECF No. 74, is **DENIED.**

It is further **ORDERED** that Plaintiff's motion to allow Robert Haertel to testify at the evidentiary hearing, ECF No. 101, is **DENIED.**

Dated: September 26, 2016            s/Thomas L. Ludington
                                     THOMAS L. LUDINGTON
                                     United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 26, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager